UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-20781-CR-HUCK(s)

UNITED STATES OF AMERICA

vs.

VICENTE ADOLFO SOLANO,
   a/k/a "Abad Solano,"

Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Vicente Adolfo Solano (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to the Superseding Information charging him with Attempting to Provide Material Support to a Foreign Terrorist Organization (Islamic State of Iraq and al-Sham), in violation of Title 18, United States Code, Section 2339B(a)(1).

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory

sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that as to Count 1 in the Superseding Information, the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of any term of years or life. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. The defendant acknowledges that the Court may also impose criminal forfeiture.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5 Subject to the express terms of the agreed upon sentencing recommendations contained in this agreement, this office reserves the right to inform the Court and the probation

2

office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or

the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

8. The United States and the defendant agree that, although not binding on the probation office or the Court, the upward adjustments of Guidelines § 3A1.4 (offense is a felony that involved or was intended to promote a federal crime of terrorism) apply to the defendant's base offense level and criminal history category.

9. The United States and the defendant agree that, although not binding on the probation office or the Court, no other upward adjustments to the advisory Guidelines other than that set out in paragraph 8, above (that is, § 3A1.4) are applicable.

## SENTENCING APPEAL WAIVER

10. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute, or is the

result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant expressly waives any argument that: (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.

11. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

Date: 3/14/18   By: _____
KAREN E. GILBERT
ASSISTANT UNITED STATES ATTORNEY

Date: 3/12/18   _____
ABIGAIL BECKER
ATTORNEY FOR DEFENDANT

Date: 3/12/18   _____
KATIE CARMON
ATTORNEY FOR DEFENDANT

Date: 3/12/18   _____
VICENTE ADOLFO SOLANO
DEFENDANT

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20781-CR-HUCK/MCALILEY(s)

UNITED STATES OF AMERICA

v.

VICENTE ADOLFO SOLANO,
    a/k/a "Abad Solano,"

Defendant.
_____/

## FACTUAL PROFFER

If this case were to proceed to trial, the United States would prove, beyond a reasonable doubt, the following facts, among others. This factual basis is being provided for the limited purpose of establishing a factual basis for the defendant's guilty plea pursuant to Fed. R. Crim. Pro. 11(b) (3) and is not inclusive of all the facts the United States would offer and prove at trial. The defendant, by his signature below, admits and agrees to the facts set out below.

Beginning in or about February 2017, and continuing until October 20, 2017, VICENTE ADOLFO SOLANO attempted to provide material support to the Islamic State of Iraq and al-Sham ("ISIS").[1]

In early 2017, SOLANO told an individual, who later became a Confidential Human Source ("CHS") for the government, that he was upset with the United States and wanted to do an attack in Miami. Later, SOLANO told this CHS that he wanted to join ISIS.

The CHS indicated that SOLANO had become increasingly upset with the policies of the United States Government and its activities throughout the world. SOLANO cited these

---

[1] On or about October 15, 2004, the United States Secretary of State designated al- Qaeda in Iraq (AQI), then known as Jam 'at al Tawid wa' al-Jahid, as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS" – which is how the FTO will be referenced herein), The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

grievances as motivation for his desire to conduct a terrorist attack in the United States. SOLANO explained to the CHS that his intended target would be a specific mall in Miami (hereinafter "The Mall"), within the Southern District of Florida. The Mall is a large shopping and entertainment complex that attracts local residents and international customers.

In an effort to gather more information about SOLANO's intentions, the CHS explained to SOLANO that the CHS may be able to introduce SOLANO to someone who may be able to assist SOLANO in his effort to conduct the attack. The CHS further stated that he would need to know if SOLANO was serious about his attack aspirations before the CHS would broker the introduction. On September 13, 2017, the CHS received a series of text messages that contained three videos from SOLANO. In the three videos sent by SOLANO, he was wearing a black mask and shirt, standing in front of a black flag identical to the one used by ISIS. The verbatim transcript of the final of the three videos sent by SOLANO is as follows:

[ S-SOLANO]

S:   I am making this video because I am joining the cause of the Islamic group, ISIS, because it is growing in social media and because it is confronting the United States and the-and the coalition and I like that because they are strong. To be frank, they are doing a holy war, a fair one, a fair one because they are, because they are being attacked by countries— because they want to take the interests they're after. And to be, and to be frank, the United States is the most terrorist country out there. We must join since the Islamic social media is grow-is growing. We must join so we can also attack them and plant a bomb so they can feel what-what- so they can see what is. Like in Boston, like Suarez wanted to do in the Keys, that's how they're going to get it, and even worse. This racist president, White supremacist who does not like Hispanics, who does not like Muslims, Chinese, Blacks, just his race. They are other genocidist invaders who killed the Indians and abolished them all. They are doing that everywhere, in the middle-east, everywhere. In the name of Allah and the holy war, and our leader, Abu, we are going to grow and we are going to show you that we are going to defeat you.

After agents reviewed the three videos, two FBI undercover employees (UCEs) were introduced to SOLANO. The UCEs held themselves out as individuals from ISIS who were available to assist SOLANO in his attack plan.

Between October 6, 2017, and October 20, 2017, the UCEs communicated with SOLANO via text message, telephone calls, and had three in person meetings. During these communications, SOLANO repeated his desire to conduct an attack and requested assistance in obtaining an explosive device to place at the Mall.

SOLANO also explained which entrance they would use at the Mall to provide the easiest means of escape after planting a bomb. SOLANO informed UCE1 that the day of the attack did not matter to him, "as long as there is [sic] a lot of people" and that SOLANO's "main motivation is to do an attack." Later in the conversation, SOLANO offered to take UCE1 to see the Mall. UCE1 accepted, and the pair traveled together to the Mall where SOLANO walked the UCE through his full attack plan. Afterward, UCE1 returned SOLANO to his residence and the two agreed to meet the following day.

In a recorded meeting on October 13, 2017, UCE1 picked up SOLANO and drove him to a hotel room in order to meet with UCE2. During this meeting, UCE2 spoke in English and used UCE1 as a translator to converse with SOLANO in Spanish (SOLANO's native language). During the initial portion of the meeting, SOLANO reiterated that he was certain and serious about his attack plan. SOLANO was asked what organization he thought UCE1 and UCE2 belonged to. SOLANO responded that he thought UCE1 and UCE2 were members of ISIS.

The meeting concluded with UCE2's telling SOLANO to sleep on his decision and to call UCE1 the next morning with his (SOLANO's) answer regarding whether he wanted to proceed with the attack.

On the morning of October 14, 2017, SOLANO called UCE1. In a recorded telephone call, SOLANO confirmed his desire to conduct the attack and asked if UCE2 had made his decision. UCE1 confirmed that UCE2 was willing to proceed.

Later that evening, SOLANO traveled to the Mall. He later texted to UCE1 a diagram of the food court inside the mall where he planned to place the device. SOLANO also provided UCE1 with a photograph of the luggage he intended to use to conceal the device.

The next morning, on October 15, 2017, in a recorded telephone call, SOLANO told UCE1 which mall entrance SOLANO planned to utilize, discussed his disguise, and confirmed that the luggage he had sent a photograph of would be used to transport the device into the Mall. UCE1 told SOLANO that he would speak with UCE2 and they would again talk on Tuesday, October 17, 2017.

SOLANO met with UCE1 and UCE2 at a hotel on Friday, October 20, 2017, to put the device together. Unbeknownst to SOLANO, the device was inert and could never actually explode. While in the hotel room, SOLANO practiced arming the device.

SOLANO left the hotel room and entered the vehicle of UCE1. When they arrived at the Mall, SOLANO took the steps that he believed would arm the device and the timer began to count down. SOLANO exited UCE1's vehicle with the device and began to walk towards the previously-determined mall entrance.

SOLANO was taken into custody prior to entering the Mall.

After the arrest, a search was conducted of the cellular telephones used by SOLANO. The search revealed numerous internet searches related to ISIS, including but not limited to, the organization's prior attacks, and its leadership.

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

Date: 3-14-18

By: _____
KAREN E. GILBERT
ASSISTANT UNITED STATES ATTORNEY

Date: 3/12/18

_____
ABIGAIL BECKER
ATTORNEY FOR DEFENDANT

Date: 3/12/18

_____
KATIE CARMON
ATTORNEY FOR DEFENDANT

Date: 3/12/18

_____
VICENTE SOLANO
DEFENDANT

4