UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  17-20781-CR-HUCK

UNITED STATES OF AMERICA,

vs.

VICENTE ADOLFO SOLANO,

    Defendant.
_____/

**SENTENCING MEMORANDUM**

    The Defendant, Vicente Adolfo Solano, through undersigned counsel, respectfully submits his sentencing memorandum and request for downward variance and states in support the following.

    Mr. Solano respectfully submits that the guideline imprisonment term of 240 months is greater than necessary to achieve the purposes of sentencing, in accordance with 18 U.S.C. § 3553(a)(2), and a sentence below that guideline term is both reasonable and sufficient.

**The History and Characteristics of Mr. Solano**

    Mr. Solano was born in a poor neighborhood in Tegucigalpa, Honduras, in 1964. (PSI ¶ 63.) During his early childhood, he was raised by both parents, as one of six children. (PSI ¶ 64.) His father worked in bars and restaurants, always struggling to earn enough to support a large family. Then, when Mr. Solano was 12 years old, his father abruptly left the family, leaving them in a terrible financial

1

position and wreaking havoc on the family as a whole. (PSI ¶63.)

Mr. Solano's mother tried to keep up with the family's financial obligations by seeking work cleaning a hospital. Ultimately, though, she was unable to make ends meet on her meager wages, and a number of her children went into foster care, due to her inability to provide for their most basic needs. (PSI ¶ 63.) Mr. Solano spent a number of months in foster care during that period, receiving poor treatment from the staff and leaving the facility to try to make it on his own. Because he had to start working at such an early age, both to support himself and his mother and siblings, he left school in the sixth grade. (PSI ¶ 73.) He took any work he could get—painting, doing construction work, and other odd jobs—and turned over his earnings to his mother. Despite their hard work, Mr. Solano recalls going hungry many days during his childhood and adolescence.

Mr. Solano's work ethic has continued throughout his life. In Honduras, he was able to obtain decent, though low-level employment, eventually working with the Honduran customs office at an executive airport in Tegucigalpa. His work with that agency helped him obtain a visa to come to the United States in the late 1990s, to try to improve his financial prospects.

Though Mr. Solano ultimately found that making ends meet continued to be difficult in the United States, due to his relative lack of education, he has doggedly worked throughout his time in this country. He has held a number of jobs performing manual labor, including working in various warehouses, and in recent years as a painter. (PSI ¶¶76-80.) Until the time of his arrest in the instant case, he

lived a humble, work-oriented life. He rented the same room in the home of his landlady for approximately 12 years. (PSI ¶ 69.) She reported to the undersigned that she never had any problems with Mr. Solano; he was always quiet and respectful to her and her family.

Mr. Solano also maintained legal immigration status, despite the difficulties of working within a complicated bureaucracy as a low-educated, non-English speaker. He was granted temporary protected status in the late 1990s, a status that was initially extended to Hondurans as a result of natural disasters that affected that country. Temporary protected status requires those living under that designation to regularly renew their application, which requires extensive forms to be submitted, along with high filing fees. Mr. Solano worked very hard to keep his status up to date, regularly filing lengthy forms and scraping together hundreds of dollars he could scarcely afford to maintain his legal status. Only as a result of his arrest in this case did he lose his immigration status. He will, undoubtedly, be removed from the United States after serving his sentence.

Mr. Solano's conduct while incarcerated further supports his request and underlines the aberrational nature of his offense conduct. Due to the nature of the charges against him, Mr. Solano was initially held in solitary confinement at the Federal Detention Center. Officials with the Bureau of Prisons then necessarily determined that he does not, in fact, pose a threat to staff or other inmates, and Mr. Solano was moved to the general population. During the entirety of his time in custody, which is now nearly seven months, Mr. Solano has been compliant with all

3

the rules and regulations at the Federal Detention Center and has no disciplinary record whatsoever. (PSI ¶ 5.)

Though he has lived in the United States for approximately 20 years, Mr. Solano has maintained relationships with his family in Honduras. He provided financial support to his two now-adult children, who continue to live in Honduras. (PSI ¶¶ 66-67.) And he also sent money to help support his elderly mother until she died several years ago. He remains close with his sister Nydia, who, along with his daughter, wrote letters of support, which are attached hereto.[1]

**The Need for the Sentence Imposed**

A sentence below the advisory guideline term will also meet the other sentencing factors under § 3553(a). Mr. Solano does not minimize the seriousness of the offense. A term of less than 20 years, however, will adequately reflect the seriousness of the offense and provide sufficient deterrence, both specific and general.

Notably, Mr. Solano is highly unlikely to commit any further crimes, no matter the length of term of imprisonment. Mr. Solano, who is now 53 years old, will be at least in his late 60s at the time of his release, and, thus, poses a low risk for recidivism. The United States Sentencing Commission has noted the inverse relationship between age at release and risk of recidivism:

---

[1] The letters and attachments thereto were provided in Spanish. Undersigned counsel is providing the Court with both the originals and translations, which were executed by a staff interpreter at the Federal Public Defender's Office.

> Older offenders were substantially less likely than younger offenders to recidivate following release. Over an eight-year follow-up period, 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release. The pattern was consistent across age groupings, and recidivism measured by rearrest, reconviction, and reincarceration declined as age increased.
> . . .
> Age and criminal history exerted a strong influence on recidivism. For offenders in Criminal History Category I, the rearrest rate ranged from 53.0 percent for offenders younger than age 30 at the time of release to 11.3 percent for offenders age 60 or older. For offenders in Criminal History Category VI, the rearrest rate ranged from 89.7 percent for offenders younger than age 30 at the time of release to 37.7 percent for offenders age 60 or older.
> . . .
> Age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed.

United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders at 3 (December 2017), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last accessed May 16, 2018). And, as noted, above, Mr. Solano will surely be removed from the United States following his term of imprisonment, thus removing whatever risk he poses for reoffending in the United States.

**Lack of Criminal History**

The PSI correctly calculates that the offense level, following a three-level downward adjustment for acceptance of responsibility, is 35; this calculation is driven, in large part, by a 12-level enhancement set forth in USSG § 3A1.4 for offenses involving terrorism. And while he has zero criminal history points, the

5

criminal history category is VI, as a result of the same guideline section, which provides that if the offense "involved, or was intended to promote, a federal crime of terrorism…the defendant's criminal history category…shall be Category VI."

Pursuant to his plea agreement, Mr. Solano agreed that this guideline provision applies in his case. (D.E. 33 ¶ 8.) And, to be clear, he agrees that the § 3A1.4 enhancement is properly applied and his guideline range is procedurally reasonable. He makes the following arguments in support of the Court's consideration of the § 3553(a) factors, specifically, his history and characteristics and the fact that he is unlikely to commit any further crimes.

Without the enhancement under § 3A1.4, Mr. Solano's criminal history category would be I. (PSI ¶ 50.)  He has never before been convicted of any offense, and the great majority of his prior contact with law enforcement consisted of traffic stops. (PSI ¶¶ 51-59.)

The impact of the § 3A1.4 enhancement is to negate the distinctions between all individuals convicted of attempting to provide material support to a terrorist organization, in violation of 18 U.S.C. § 2339B. In every case in which the defendant is convicted under this statute, the enhancement will significantly increase the offense level and bring the criminal history category to VI, initially rendering an advisory guideline range in excess of the statutory maximum and ultimately yielding a guideline term at the statutory maximum, 240 months. The impact of the enhancement is to erase the distinctions between the most radicalized, historically aggressive and violent terrorists, and those who are confused, unrealistic, and

ineffective "wannabes." A criminal history category of VI, thus, is procedurally accurate, but it overstates Mr. Solano's true criminal history.

The Court may consider Mr. Solano's lack of any criminal history as part of its analysis pursuant to §3553(a). His conduct in this case was truly aberrant, evidenced by the fact that he has zero criminal history points. A number of other courts have considered the defendant's true lack of criminal history and the outsized impact of the § 3A1.4 enhancement in imposing a below-guidelines sentence; while the circumstances of these cases are not directly on point, the courts' analyses are informative. *See, e.g.*, *United States v. Thavaraja*, 740 F.3d 253, 260 (2d Cir. 2014) (affirming sentence of 108 months for defendant convicted of 18 U.S.C. § 2339B, where advisory range and statutory maximum were 240 months, and where district court weighed the fact that the defendant acted as the principal procurement officer for and had significant, longstanding, and direct ties with the Tamil Tigers, a designated foreign terrorist organization, against the fact that the defendant did not have any prior criminal history convictions, was a Sri Lankan citizen who would likely be deported upon release from prison, and had an exemplary record during his period of pre-trial detention); *United States v. Benkahla*, 501 F. Supp. 2d 748 (E.D. Va. 2007) (applying § 3A1.4 enhancement to defendant convicted of making false declarations to a grand jury and false statements to FBI agents regarding his participation in a *jihad* training camp and his use of automatic weapons and rocket propelled grenades, but imposing a sentence below the guideline range, due to defendant's lack of criminal history,

"strong, positive relationships with friends, family, and the community," comparison with "persons [who] all committed and were convicted of more dangerous and violent offenses than [d]efendant, but none received a sentence as severe as his guideline range suggests," and defendant's negligible likelihood of recidivism).

The advisory guideline in this case overstates Mr. Solano's criminal history. A guideline sentence, thus, would punish him as harshly as a defendant who committed the same offense but had a long history of violent, recidivist criminal conduct. Mr. Solano does not minimize the seriousness of his conduct in this case; it was, however, aberrant behavior in his otherwise law-abiding, hard-working life.

WHEREFORE Mr. Solano respectfully requests that the Court consider the information provided above in fashioning a reasonable sentence and impose a sentence below the advisory guideline term.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

By:   */s/Abigail E. Becker*
       Assistant Federal Public Defender
       Florida Bar No.: 072284
       150 W. Flagler Street, Suite 1700
       Miami, Florida  33130
       Tel:  305-530-7000/Fax:  305-536-4559
       abigail_becker@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on May 23, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Abigail E. Becker*